# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

JACQUELINE MOORE,

        Defendant.

2:18-cr-00026-KJD-VCF

**ORDER**

MOTION TO SUPPRESS [ECF NO.21]

      Before the Court is Defendant Jacqueline Moore's Motion to Suppress. (ECF No. 21). For the reasons discussed below, Defendant's motion is denied.[1]

## BACKGROUND

      In this case, Defendant is charged with being a felon in possession of a firearm and ammunition. (ECF No. 1). Police found a gun in Defendant's car and ammunition in her purse after she allegedly committed a robbery. (ECF No. 21 at 3-4; ECF No. 24 at 3-4).

      On October 27, 2017, 911 received a call from K.O. who stated that she had been robbed. (ECF No. 21-1). K.O. said that "Jackie" broke her car window, pointed a small gun at her, threatened to shoot her, and stole her purse. (*Id.*). "Jackie" drove off with a male passenger in a "gold-ish" "truck." (*Id.*). K.O. described Jackie as black, approximately 37 years old, medium build, with short blonde hair, wearing a one-piece gray and black jumpsuit. (*Id.*).

---

[1] This order is being issued without an evidentiary hearing. "The Fourth Amendment requires that a hearing be held" if "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). As discussed further below, the Court finds the alleged omissions in this case were not necessary to the finding of probable cause, and therefore a hearing is not necessary.

Based on the 911 call, police began searching the area for a gold "truck" and the two suspects. (ECF No. 24-4). Police arrived at the crime scene and interviewed K.O. (ECF No. 21-4). During the process, K.O. described the male passenger, "Stacey," as a heavy-set, light-skinned black male. (*Id.*). K.O. also indicated that the gold vehicle could have been an SUV. (*Id.*). The on-scene officers updated the officers searching for the suspects regarding "Stacey's" description and informed the searching officers that the vehicle could also be an SUV. (*Id.*).

Approximately 20 minutes after the 911 call, two officers spotted a gold SUV with two individuals who matched the descriptions given by K.O. (ECF No. 24-4). The two officers, with their weapons drawn, ordered the suspects to lie down face first to wait for other officers to arrive. (*Id.*). Police eventually handcuffed both suspects. (*Id.*). During this process, the male responded when the officers called him "Stacey." (*Id.*). Approximately 30 minutes later, officers took K.O. to view the suspects. (ECF No. 24-9). K.O. positively identified the vehicle, Defendant as "Jackie", and the male suspect as "Stacey." (*Id.*). Officers applied for and were granted a search warrant for the vehicle. (ECF No. 21-2 at 8-9). Officers found a gun in the car and ammunition in Defendant's purse. (ECF No. 21 at 3-4; ECF No. 24 at 3-4). Officers also determined that Defendant is a convicted felon and obtained a warrant for her DNA. (ECF No. 21 at 5; ECF No. 24 at 4)

Defendant filed a motion to suppress all evidence obtained following the stop in this case. (ECF No. 21). Defendant argues that since K.O. was not sure whether the vehicle was a truck or SUV, officers did not have reasonable suspicion to stop the Defendant merely for being in a gold SUV. (*Id.* at 6). Defendant also asserts that the level of force used by officers and the delay before Defendant was identified by K.O. transformed the stop into an arrest.[2] (*Id.* at 7-8). Finally, Defendant contends that the Government's application for a search warrant regarding Defendant's car misrepresented and omitted key

---

[2] Defendant also asserts, without any further discussion, that the length of her detention "was unreasonable and constituted a separate violation of [her] Fourth Amendment rights." (ECF No. 21 at 7-8). The Court will not address this assertion, which was mentioned in passing without any supporting argument or citation to authority. *See* LR 7-2(d).

facts that undermine the Court's probable cause determination. In opposition, the Government argues officers had reasonable suspicion to stop Defendant based on K.O.'s information, the stop was not an arrest, and the warrant application did not contain any material misrepresentation or omission. (ECF No. 24 at 9-11, 15-16). Defendant filed a reply further supporting her arguments. (ECF No. 27).

**DISCUSSION**

The Fourth Amendment protects the right of people to be secure against unreasonable searches and seizures. Though the Fourth Amendment does not specifically preclude admission of evidence obtained in violation of its provisions, the courts have established "an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139-40 (2009).

**I.      Whether this Case Involves a Stop or Arrest**

To determine the level of cause or suspicion the officers had to have to take Defendant into custody, the Court must determine whether this was a stop or arrest. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). An investigatory *Terry* stop must be supported by reasonable suspicion. *United States v. Crapser*, 472 F.3d 1141, 1147 (9th Cir. 2007).

"There is no bright-line rule to determine when an investigatory stop becomes an arrest." *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996). In evaluating the totality of the circumstances, the Court "considers the intrusiveness of the methods used in light of whether these methods were 'reasonable given the specific circumstances.'" *Green v. City & Cty. of San Francisco*, 751 F.3d 1039, 1047 (9th Cir. 2014) (quoting *Washington v. Lambert,* 98 F.3d 1181, 1185 (9th Cir. 1996). The Court allows "especially intrusive means" to effectuate a *Terry* stop when "the officers' conduct was a reasonable response to legitimate safety concerns on the part of the investigating officers," such as:

3

> 1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; 2) where the police have information that the suspect is currently armed; 3) where the stop closely follows a violent crime; and 4) where the police have information that a crime that may involve violence is about to occur.

*Id.* (internal citations omitted). "The length and scope of detention must be justified by the circumstances authorizing its initiation." *Pierce v. Multnomah Cty., Or.*, 76 F.3d 1032, 1038 (9th Cir. 1996).

The Court finds officers conducted a *Terry* stop on Defendant when they first took her into custody. Though the officers used their weapons to order Defendant to lie down and handcuffed her, the officers' use of force does not transform the stop into an arrest. K.O. told police that "Jackie" had a small gun, which could have been easily concealed, and displayed violent tendencies during the robbery, such as breaking a car window and threatening to shoot K.O. It was reasonable for officers to take the precaution of handcuffing Defendant while determining whether she was involved in the robbery. The officers did not keep Defendant in custody for an unreasonable amount of time before having K.O. identify her. The officers' conduct was a reasonable response to their legitimate safety concerns while they investigated Defendant and waited for K.O. to identify her. Because this was a *Terry* stop, the Officers needed to have reasonable suspicion to initially take Defendant into custody.

## II. Whether Officers Had Reasonable Suspicion to Stop Defendant

In evaluating the validity of an investigative *Terry* stop, the Court must consider "the totality of the circumstances—the whole picture." *United States v. Cortez,* 449 U.S. 411, 417 (1981). "[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation omitted). "The officer, of course, must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

4

The Court finds the officers had reasonable suspicion to stop Defendant. Defendant was in a gold SUV. Though K.O. was not entirely clear as to whether the suspect's vehicle was a truck or SUV, officers could still use K.O.'s description as a starting point to looking for the suspects. Officers did not merely rely on the vehicle's body type and color. Officers noted that the person in the driver's seat matched the description of "Jackie" and the passenger of the car matched the description of "Stacey."[3] This also coincided with K.O.'s statement that "Jackie" was driving the vehicle and "Stacey" was the passenger. The vehicle and suspects were relatively close to the crime scene approximately 20 minutes after the crime. Under the totality of the circumstances, the officers had reasonable suspicion to stop Defendant.[4]

### III. Whether the Search Warrant Affidavit Made Material Misrepresentations

Defendant argues that the officers' search warrant application affidavit was invalid based on two omissions. (ECF No. 21 at 9). The affidavit states that the suspects were driving an SUV and does not state that K.O. previously identified the vehicle as a "truck." (ECF No. 21-2 at 8-9). Defendant argues this "deprived the issuing judge of crucial information that may have led her to conclude that the [SUV] had been illegally stopped." (ECF No. 21 at 9). The affidavit also does not mention that police issued a misdemeanor warning stating K.O. "was trespassed by…location management" from the scene of the crime at 6:00 p.m., more than two hours after the crime and approximately one hour before officers applied for the search warrant. (ECF No. 21-2 at 7-9). Defendant asks, "If police thought that [K.O.] had credibly reported a violent offense at the property for which she bore no culpability, then why was she given a citation?" (ECF No. 21 at 9).

---

[3] It is not clear how much of the two suspects officers could see when they decided to initiate the stop. Officers could clearly see Defendant's hair and the two suspects' general physical build. (ECF No. 24-4). It appears the two suspects were sitting in a parked vehicle when officers first saw the suspects and decided to stop them. (*Id.*). By the time officers parked and exited their own car, the suspects had exited their vehicle and officers could see that Defendant's clothes matched K.O.'s description. (*Id.*).

[4] Had the Court concluded that the stop had transformed into an arrest based on the officer's use of force, it is likely the Court would also have concluded that the officers had probable cause for the arrest. During the process of taking the suspects into custody, the male suspect responded to the name "Stacey," indicating that the two suspects were the individuals named by K.O. (ECF No. 24-4).

"Not all information in the government's possession need be included in the warrant affidavit." *United States v. Garza*, 980 F.2d 546, 551 (9th Cir. 1992). "A misrepresentation based on an omission is material only where the omitted facts 'cast doubt on the existence of probable cause.'" *Crowe v. Cty. of San Diego*, 608 F.3d 406, 435 (9th Cir. 2010) (quoting *Garza*, 980 F.2d at 551). If an affidavit containing the omitted information would be "insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks v. Delaware*, 438 U.S. 154, 156 (1978).

The Court finds that the search warrant affidavit did not contain material omissions. Assuming *arguendo* that the officer deliberately or recklessly omitted the information, the Court finds the information would not have affected the Judge's decision to issue a search warrant had it been included in the affidavit. Including the words "truck or SUV" to the portion of the affidavit identifying the vehicle would not cast doubt on the existence of probable cause. Defendant was found in a gold SUV, one of the two potential vehicle types K.O. mentioned, and K.O. positively identified Defendant as the individual who committed the robbery. (ECF No. 21-2 at 8-9). The trespass citation is not relevant to K.O.'s credibility, which appears to be Defendant's sole argument on this point. The citation merely states that K.O. was trespassed by the management of the location where the crime took place. There is no indication that the trespass citation has any bearing on K.O.'s credibility relating to this specific incident or in general.

Because police had reasonable suspicion to stop Defendant and the search warrant affidavit contained no material omissions, there is no basis to suppress the evidence in this case.

///

///

///

ACCORDINGLY, and for good cause shown,

IT IS HEREBY ORDERED that Defendant's Motion to Suppress (ECF No. 21) is DENIED.

DATED this 7th day of May, 2018.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE